UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

WISDOM MINISTRIES, INC.,           )
                                   )
            Plaintiff,             )
                                   )
v.                                 )        Case No. 22-CV-0477-CVE-CDL
                                   )
ALLISON D. GARRETT, Chancellor of the )
Oklahoma State Regents for Higher  )
Education, in her official capacity, and )
OKLAHOMA STATE REGENTS FOR         )
HIGHER EDUCATION,                  )
                                   )
            Defendants.            )

OPINION AND ORDER

Now before the Court are the following motions: Plaintiff's Motion for Preliminary or

Permanent Injunction or Other Relief (Dkt. # 15); Plaintiff's Motion to Request a Hearing on

Plaintiff's Motion for Preliminary or Permanent Injunction and Other Relief (Dkt. # 19); Defendants'

Motion to Dismiss (Dkt. # 25); and Plaintiff's Motion for Ruling on Pending Fully Briefed Motion

for Preliminary Injunction or Permanent Injunction (Dkt. # 38). Plaintiff Wisdom Ministries, Inc.

(Wisdom Ministries) filed this case alleging that defendants Allison D. Garrett and the Oklahoma

State Regents for Higher Education (the Regents) have ordered Wisdom University, an online

university operated by Wisdom Ministries,[1] to cease and desist from issuing degrees until it obtains

proper accreditation as required by OKLA. STAT. tit. 70, § 4103(A). Plaintiff claims that the

accreditation requirement, as applied to religious colleges and universities, violates the Free Speech,

Free Exercise, Establishment, and Association Clauses of the First Amendment. Plaintiff also argues

---

[1]      Wisdom Ministries is the named plaintiff, but the case primarily concerns the operation of
Wisdom University. The Court will refer to Wisdom Ministries and Wisdom University as
separate entities, because it appears from the allegations of the amended complaint that
Wisdom University is simply one part of the operations of Wisdom Ministries.

that requiring religious schools to obtain accreditation to grant degrees also violates the Equal Protection Clause of the Fourteenth Amendment and the Oklahoma Religious Freedom Act, OKLA. STAT. tit. 51, § 253 (ORFA).

## I.

The amended complaint alleges that Nasir Siddiki founded Wisdom Ministries in 1995, and Siddiki is described as a "nationally-acclaimed minister, speaker, and business leader who is well known for teaching Biblical wisdom principles at the Wisdom Center in Tulsa, Oklahoma." Dkt. # 14, at 3. In 2010, Wisdom Ministries opened an online university named Wisdom University to provide faith-based education, and Wisdom University offers various levels of certification in biblical education ranging from a diploma up to the level of a doctoral degree. Id. at 4. Wisdom University has been accredited by Transworld Accrediting Commission International (Transworld), but Transworld has not been approved to serve as accrediting agency by any state or federal governmental entity. Id. Wisdom University discloses on its website that it has not received accreditation that is acceptable to the United States Department of Education (Department of Education), but it claims that its accreditation is acceptable to many churches and religious organizations. Id. Wisdom Ministries alleges that 138 students have received degrees from Wisdom University, and there are currently 280 students enrolled at Wisdom University. Id. at 6.

The state of Oklahoma requires that all post-secondary educational institutions offering degrees must receive proper accreditation before being permitted to offer a college degree. Oklahoma law defines a "degree-granting institution" as any institution "that offers education leading to an associate's degree or higher." OKLA. STAT. tit. 70, § 4103(A). The statute provides that "[a]ll private and out-of-state degree granting institutions shall be accredited by an accrediting

2

agency which is recognized by the Secretary of the [Department of Education] as a reliable authority as to the quality of education or training offered by institutions of higher education for the purposed of the Higher Education Act of 1965, as amended." OKLA. STAT. tit. 70, § 4103(B).  Oklahoma also requires "for the purposes of consumer protection and to maintain financial eligibility for Title IV funding as described in 34 CFR Part 600, institutions shall be authorized according to the policies and procedures established by the Oklahoma State Regents for Higher Education." Id.  The following types of institutions are exempt from the requirements of § 4103:

1.      Private institutions participating in the Oklahoma Tuition Equalization Grant program; and

2.      Out-of-state public and private institutions participating in a state authorization reciprocity agreement that only conduct activities in Oklahoma that are acceptable under the terms and conditions of the state authorization reciprocity agreement.

OKLA. STAT. tit. 70, § 4103(C).  Wisdom Ministries alleges that accreditation of Wisdom University through an accrediting agency recognized by the federal government would impose a substantial burden on Wisdom Ministries.  Wisdom Ministries claims that review by a federally-approved accreditation agency would require the evaluation of its "faculty, curriculum, facilities, and much more," and additional state regulations would "touch[] on curriculum and the qualifications of teachers."  Dkt. # 14, at 7.

On August 15, 2022, Debbie Blank, a senior vice chancellor for the Regents, sent a letter to Wisdom University demanding that it immediately cease and desist from any degree-granting activity. Id. at 19.  The letter advised Wisdom Ministries that the Regents have the sole authority under Oklahoma law to authorize private and out-of-state degree granting institutions to operate in Oklahoma, and during a routine review of accrediting agencies the Regents discovered that Wisdom

3

University was accredited by Transworld.  Id.  Transworld is not recognized as an accrediting agency by the Department of Education, and an educational institution accredited by Transworld alone may not grant degrees within Oklahoma.  Id.  The Regents asked Wisdom University to complete a questionnaire no later than September 15, 2022, but the Regents subsequently agreed to defer any enforcement action against Wisdom University until November 1, 2022.  Id. at 8.  Wisdom University claims that it filed this case as a challenge to the proposed enforcement action by the Regents, and Wisdom University ask the Court to enter a preliminary injunction to prohibit the Regents from taking any action preventing Wisdom University from prospectively granting degrees or retroactively invalidating degrees that have already been granted.  Dkt. # 15, at 2.

Wisdom Ministries argues that requiring Wisdom University to obtain accreditation through an accreditation agency approved by the Department of Education would impose a substantial burden on Wisdom Ministries and would invite governmental interference with the exercise of its religious practices and beliefs.  Wisdom Ministries alleges the following:

- Obtaining State approval in order to operate and grant degrees would interfere with the school's religious liberty to direct religious education as it sees fit.  In other words, seeking State approval could override the ministry's ultimate authority to guide the teaching of the school.

- Obtaining State approval would subordinate to the State and to the [Regents] the ministry's responsibility to God in deciding how to properly educate students in religious teaching and in deciding who should do the teaching.

- Obtaining State approval and answering to the State would immediately pressure the religious doctrines of the ministry as Wisdom University would need to continually consider whether (1) course selection; (ii) faculty appointments; (iii) faculty salaries; (iv) many other issues, could affect its accreditation.

- Obtaining State approval to operate and grant degrees would interfere with the ministry's religious liberty to direct religious education as they see fit.

The school's religious education is predicated on the Bible, and it does not wish to ascribe to the dictates of secular educational regulations.

• Obtaining State approval to operate and grant degrees would impose requirements which would obstruct the ministry's mission to instruct students according to the tenets of its faith by telling the ministry who is and who is not qualified to offer religious instruction.

Dkt. # 14, at 8-9.  Wisdom Ministries claims that requiring it to operate without the ability to grant degrees would reduce the attractiveness of the school to potential students and donors, and Wisdom Ministries would be at a competitive disadvantage against out-of-state online religious institutions that are not subject to an accreditation requirement.  Id. at 9.  Stripping Wisdom University of the ability to grant degrees could make it more difficult for students to transfer their credits from Wisdom University to another institution, and it could suggest that the quality of the education provided by Wisdom University is inferior to other institutions.  Id.

Wisdom Ministries has filed this case seeking declaratory and injunctive relief, nominal damages, and attorney fees.  Wisdom Ministries seeks a declaratory judgment that the state of Oklahoma's accreditation requirement violates Wisdom Ministries's rights of free exercise of religion, free speech, and freedom of association guaranteed by the First Amendment, as well as the Establishment Clause of the First Amendment and the Equal Protection Clause of the Fourteenth Amendment.[2]  Wisdom Ministries also seeks relief under the ORFA.  Finally, Wisdom Ministries

---

[2]     Wisdom Ministries claims in its amended complaint that it is entitled to relief under the "corresponding protections of the Oklahoma Constitution."  Dkt. # 14, at 15.  However, Wisdom Ministries does not cite any specific provisions of the Oklahoma Constitution, and it simply assumes that there is a similar provision of the Oklahoma Constitution for each of its federal constitutional claims.  Wisdom Ministries also includes no argument in any of its briefing concerning the applicability of any state constitutional provision.  It is not the Court's job to determine whether there is actually a corresponding state constitutional provision or construct an argument on behalf of Wisdom Ministries that a state constitutional provision would provide greater or additional rights than a corresponding federal

seeks preliminary and permanent injunctive relief preventing the Regents from prohibiting or threatening to prohibit Wisdom University from granting degrees.

## II.

In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court must determine whether the claimant has stated a claim upon which relief may be granted. A motion to dismiss is properly granted when a complaint provides no "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). A complaint must contain enough "facts to state a claim to relief that is plausible on its face" and the factual allegations "must be enough to raise a right to relief above the speculative level." Id. (citations omitted). "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 562. Although decided within an antitrust context, Twombly "expounded the pleading standard for all civil actions." Ashcroft v. Iqbal, 556 U.S. 662, 683 (2009). For the purpose of making the dismissal determination, a court must accept all the well-pleaded allegations of the complaint as true, even if doubtful in fact, and must construe the allegations in the light most favorable to a claimant. Twombly, 550 U.S. at 555; Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1215 (10th Cir. 2007); Moffett v. Halliburton Energy Servs., Inc., 291 F.3d 1227, 1231 (10th Cir. 2002). However, a court need not accept as true those allegations that are conclusory in nature. Erikson v. Pawnee Cnty. Bd. of Cnty. Comm'rs, 263 F.3d 1151, 1154-55 (10th Cir. 2001). "[C]onclusory allegations without supporting factual

---

constitutional provision. The Court declines to consider the applicability of any state constitutional provision when the parties have provided no legal authority or argument concerning the applicability of the Oklahoma Constitution.

averments are insufficient to state a claim upon which relief can be based." <u>Hall v. Bellmon</u>, 935 F.2d 1106, 1109-10 (10th Cir. 1991).

**III.**

Plaintiff argues that requiring Wisdom University to obtain accreditation from an accrediting agency approved by the Department of Education would simultaneously curtail plaintiff's free exercise of its religion and needlessly entangle the State of Oklahoma in the practice of religion. Dkt. # 14, at 9-10. Plaintiff further claims that prohibiting it from using the word "degree" to describe the certificates awarded to students of Wisdom University violates its right to free speech. <u>Id.</u> at 12. Defendants respond that the accreditation requirement for degree granting institutions is neutral towards religion and does not involve the state government in the religious affairs or teachings of any institution. Dkt. # 25, at 2-4. Defendant also argues that the act of granting a college degree is conduct, not speech, and the Free Speech Clause of the First Amendment does not prohibit the state from imposing neutral restrictions on the issuance of college degrees. Dkt. # 24, at 27-28.

**<u>Free Speech</u>**

Plaintiff argues that the accreditation requirement of § 4103 violates the Free Speech Clause of the First Amendment by prohibiting plaintiff from representing that its students will receive a "degree," as opposed to a certificate or diploma. Dkt. # 16, at 13. Plaintiff asserts that this restriction is a content based limitation of plaintiff's speech that is subject to strict scrutiny, and defendants cannot show that § 4103 is narrowly tailored to achieve a compelling state interest. <u>Id.</u> Defendants respond that states historically have had the power to regulate the issuance of college degrees, and the conferral of a college degree is not speech that is protected by the First Amendment.

7

Dkt. # 24, at 28.  Even if there is a speech component to this act, defendants argue that this would qualify as commercial speech that is entitled to significantly less protection under the First Amendment.  Id.

The First Amendment provides that "Congress shall make no law . . . abridging the freedom of speech . . . ." U.S. CONST. amend. I. While the First Amendment's Free Speech provision does not protect conduct generally, it protects expressive conduct and accurate commercial speech. See Rumsfeld v. Forum for Acad. & Institutional Rts., Inc., 547 U.S. 47, 62 (2006); Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'ns of New York (Central Hudson), 447 U.S. 557, 561 (1980). A law rendering a course of conduct illegal does not violate the right of Free Speech "merely because the conduct was in part initiated, evidenced, or carried out by means of language, either spoken, written, or printed." Rumsfeld, 547 U.S. at 62 (quoting Giboney v. Empire Storage & Ice Co., 336 U.S. 490, 502 (1949)).

While conduct is not generally protected under the Free Speech Clause, the First Amendment protects "expressive conduct." Texas v. Johnson, 491 U.S. 397, 404 (1989).  Conduct is expressive where an entity intends to convey "a particularized message" through the conduct and a great likelihood exists that those who view the message will understand it.  Id.  The First Amendment also protects commercial speech, defined as expression solely concerning the economic interests of the communicating parties. Central Hudson, 447 U.S. at 561.  Designations indicating specific academic or professional achievement, like CPA and CFP, constitute commercial speech.  Ibanez v. Florida Dep't of Bus. & Pro. Regul, Bd. of Acct., 512 U.S. 136, 142 (1994).  While the First Amendment protects commercial speech, it does not protect misleading speech.  Thompson v. W. States Med. Ctr., 535 U.S. 357, 367 (2002); see also Ibanez, 512 U.S. at 142.

The Court does not find that defendants have infringed plaintiff's right to free speech by requiring that plaintiff comply with the accreditation requirement of § 4103 before being permitted to offer degrees to students.  States have historically been permitted to regulate post-secondary educational institutions that operate within their borders, and this includes ensuring that institutions issuing degrees meet basic requirements of academic rigor.  Nova University v. Educ. Institution Licensure Comm'n, 483 A.2d 1172, 1180-81 (D.C. 1984); Shelton College v. State Bd. of Educ., 226 A.2d 612, 617-19 (N.J. 1967).  The act of conferring a degree on a student is primarily transactional in nature, and this is treated as business conduct that is generally subject to the regulation of the state where the college or university is located.  Nova, University, 483 A.2d at 1181.  The issue raised by plaintiff has nothing to do with governmental restriction of content or subject matter being taught at Wisdom University but, instead, the state is applying a facially neutral regulation that applies to all colleges and universities operating within Oklahoma.  Section 4103 merely requires that the institution obtain accreditation that it is in fact a post-secondary school meeting certain minimum requirements before the institution will be permitted to offer a "degree," and prohibiting the issuance of degrees by non-accredited schools falls with the power of the state to regulate business conduct.

Even if the Court were to assume that there is a speech component to the issuance of a college degree, the statute at issue is facially neutral toward religious institutions and would impose at most an incidental burden on commercial speech.  The requirement that plaintiff obtain accreditation from an approved accreditation agency incidentally burdens speech in a content-neutral manner, and plaintiff's right to share religious beliefs with its students is not burdened by § 4103.  Nat'l Inst. of Family and Life Advocates v. Becerra, 138 S. Ct. 2361, 2373 (2018) ("The First

9

Amendment does not prevent restrictions directed at commerce or conduct from imposing incidental burdens on speech"). Plaintiff argues that § 4103 should be subject to strict scrutiny review but, as the Court has already noted, the issuance of a college degree is generally treated as commercial or business conduct. Commercial speech is generally subject to a form of intermediate scrutiny under the test enunciated in Central Hudson, but false commercial speech is not entitled to any protection under the Free Speech Clause. Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio, 471 U.S. 626, 638 (1985); Bolger v. Youngs Drug Products Corp., 463 U.S. 60, 70 (1983). Wisdom University has not obtained the accreditation required by § 4103 and it is not authorized to issue degrees in the state of Oklahoma. In other words, it would be objectively false for Wisdom University to represent that it is issuing a "degree" to a student, and this would not constitute protected speech under the First Amendment. The accreditation requirement does not require or coerce plaintiff to engage in compelled speech, change its course curriculum, or change its religious teaching in any way. Plaintiff is free to provide the same education to students without complying with the accreditation requirement of § 4103, as long as it does not purport to offer a "degree," and plaintiff has not shown that the accreditation requirement of § 4103 violates the Free Speech Clause when this statute is applied to religious colleges or universities.

**Free Exercise**

Plaintiff asserts that defendants violated the plaintiff's right to freely exercise its religion by enforcing § 4103 based on two separate theories. Dkt. #14, at 11. First, plaintiff argues that § 4103 is not a neutral or generally applicable statute, because the statute specifically targets religious colleges that refuse to obtain accreditation from an agency approved by the Department of Education. Dkt. # 16, at 17. Second, plaintiff invokes the ministerial exception that prevents a governmental

entity from interfering with the inner workings of church affairs, and argues that § 4103 entangles the state in the internal governance of plaintiff's religious school.  Id. at 6.

The Free Exercise Clause provides that "Congress shall make no law . . .  prohibiting the free exercise . . ." of religion. U.S. CONST. amend. I.  This clause does not preclude states from validly regulating religious conduct.  Grace United Methodist Church v. City of Cheyenne, 451 F.3d 643, 649 (10th Cir. 2006).  Rather, if a governmental entity's policy is neutral or generally applicable, the government must simply demonstrate that the policy "'rationally relate[s] to a legitimate government interest."  Harmon v. City of Norman, 61 F.4th 779, 794 (10th Cir. 2023) (providing rational basis test).  A law is not generally applicable if it "invites" the government to consider the conduct of a particular person through an individualized or subjective exemption.  Fulton v. City of Philadelphia, Pennsylvania, 141 S. Ct. 1868, 1877 (2021).  The Supreme Court has also recognized a ministerial exception that permits a church to select its own ministers or leaders, because this constitutes governmental interference with the inner workings of a religious institution.  Hosanna-Tabor Evangelical Lutheran Church and School v. EEOC, 565 U.S. 171, 188-89 (2012).

Section 4103 provides that that "[a]ll private and out-of-state degree granting institutions shall be accredited by an accrediting agency which is recognized by the Secretary of the [Department of Education] as a reliable authority as to the quality of education or training offered by institutions of higher education for the purposed of the Higher Education Act of 1965, as amended."  OKLA. STAT. tit. 70, § 4103(B).  The statute contains exceptions to the accreditation requirement for private institutions participating in the Oklahoma Tuition Equalization Grant program and for out-of-state public and private institutions participating in a state authorized reciprocity agreement.  Plaintiff argues that § 4103 is not neutral towards religion, because it contains exceptions for other types of

institutions without providing an exception for religious institutions. Dkt. # 16, at 17. The mere fact that a statute has exemptions does not automatically mean that the statute is not neutral and generally applicable, but the existence of exemptions does make a challenge by a religious organization possible. Grace United Methodist Church, 451 F.3d. at 650. The classic example of an individualized exception to a generally applicable law comes from the Supreme Court's decision in Sherbert v. Verner, 374 U.S. 398 (1963), in which the state applied a subjective "good cause" exemption when evaluating claims for unemployment benefits. However, a statute will also be found to lack generally applicability if "it prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way." Fulton, 141 S. Ct. at 1877.

Plaintiff has not shown that § 4103 contains an individualized exception or that the statute prohibits religious conduct while permitting secular persons or entities to engage in similar conduct. The statutory exceptions do not invite "case by case" or subjective evaluation of a request to avoid the accreditation requirement of § 4103, and the exceptions provide clear and objective criteria that apply equally to religious and secular institutions. The statutory exceptions for private institutions participating in the Oklahoma Tuition Equalization Grant program and for institutions conducting activities in Oklahoma pursuant to a reciprocity agreement apply to "institutions," regardless of whether the school is religious or secular, and the statute does not favor secular institutions or disadvantage religious institutions in any way. Section 4103 also does not prohibit conduct for a religious college or university that is otherwise permitted a secular institution. See Fulton, 141 S. Ct. at 1877. Section 4103 is a neutral and generally applicable statute and the Court will apply rational basis review when considering plaintiff's Free Exercise claim.

Under rational basis review, § 4103 will be valid and enforceable as long as the accreditation requirement rationally relates to a legitimate state interest. The statute expressly states that the accreditation requirement is for the "purposes of consumer protection and to maintain financial eligibility for Title IV funding as described in 34 CFR Part 600." OKLA. STAT. tit. 70, § 4103(B). Defendants argue that ensuring that post-secondary institutions meet minimal accreditation standards for the purpose of consumer protection is a legitimate state interest, because prospective students and employers have a strong interest that degrees offered by universities and colleges in Oklahoma meet a generally accepted standard.  Dkt. # 24, at 19.  Defendants also argue that religious institutions may choose not to participate in the regulatory scheme and provide a religious education in any manner they choose, as long as they do not purport to offer a degree. Id.  Consumer protection is a legitimate state interest, and there is an equal need to protect students attending a secular or religious institution from paying for a degree program that does not meet certain minimal objective standards.  The statute does not impose any higher burden on religious schools to obtain accreditation and such institutions are free to obtain accreditation from an agency specializing on accreditation for religious schools.  Nothing about the accreditation requirement suggests that the state is favoring secular institutions or acting with hostility to religious institutions, and plaintiff has not shown that enforcement of the accreditation requirement of § 4103 violates the Free Exercise Clause as applied to religious colleges or universities.

**Establishment Clause**

Plaintiff alleges that defendants violated the Establishment Clause by purporting to establish standards for religious education. Dkt. # 14, at 10. The Establishment Clause provides that "Congress shall make no law respecting an establishment of religion." U.S. CONST. amend. I. This

clause does not provide religious institutions general immunity from secular laws.  Our Lady of Guadalupe Sch. v. Morrisey-Berru, 140 S. Ct. 2049, 2060 (2020). Rather, the clause protects the institution's autonomy with respect to its internal management. Id.  Further, this clause prohibits states from clearly preferring one religious denomination over another.  Trump v. Hawaii, 138 S. Ct. 2392, 2417 (2018).  The Supreme Court has abandoned the former Lemon[3] test and, instead, courts should interpret the Establishment Clause with"reference to historical practices and understandings." Kennedy v. Bremerton Sch. Dist., 142 S. Ct. 2407, 2427-28 (2022).

Plaintiff relies heavily on a case decided by the Supreme Court of Texas that invalidated parts of a Texas statute intended to ban "diploma mills," and the case was particularly focused on whether a religious institution could describe itself as a "seminary" that was authorized to award a "degree." HEB Ministries, Inc. v. Texas Higher Educ. Coordinating Bd., 235 S.W.3d 627 (Tex. 2007).  HEB Ministries, Inc. (HEB) was a church based in Fort Worth, Texas that also operated a school identified as the Tyndale Theological Seminary and Bible Institute, and HEB expressly stated in its course catalog that it refused to seek any type of accreditation for the school.  Id. at 638.  The Texas Commissioner of Higher Education notified HEB that the school did not meet the requirements of a "seminary" under state law and the school had no authority under Texas law to award a degree, and HEB was fined for numerous violations of improperly awarding degrees and using the term "seminary."  Id. at 639-40.  HEB filed a lawsuit alleging that the state's attempt to regulate the use of the terms "seminary" and "degree" as applied to religious institutions violated HEB's rights under the Establishment and Free Exercise Clauses of the First Amendment, as well as comparable provision of the Texas Constitution.  Id. at 641.  In a plurality decision, the Texas Supreme Court

---

[3]    Lemon v. Kurtzman, 403 U.S. 602 (1971).

agreed that the Texas regulatory scheme favored one model of religious education over another. According to the Texas Supreme Court, the state was improperly expressing a preference for a model of religious education that was based on a secular educational model, and this preference constituted the establishment of religion in violation of the Establishment Clause. Id. at 646-47 The state argued that an institution could simply choose not to use the disputed terms and avoid any accreditation requirement, but even the presentation of this choice to religious educational institutions entangled the state in matters of religion. Id. at 647.

The Court does not find that HEB Ministries is persuasive authority concerning the issues raised by the parties in this case. No court outside of Texas has ever followed HEB ministries, and the Seventh Circuit has expressly rejected the Texas Supreme Court's interpretation of the Establishment Clause as applied to a state's authority to regulate the issuance of degrees by religious college or university. Illinois Bible Colleges Association v. Anderson, 870 F.3d 631, 637-38 (7th Cir. 2017). The Seventh Circuit found that the reasoning of the plurality in HEB Ministries was "flawed," and it did not constitute entanglement with the affairs of a religious institution when that institution voluntarily participates in a secular regulatory scheme that neutrally applies to all colleges and universities within the state. Id. at 638.

Section 4103 requires that an accreditation agency approved by the Department of Education accredit all private degree-granting institutions with two exceptions. Dkt. #14, at 6. However, Wisdom University is not accredited by approved agency and does not qualify for either exception. Id. at 10. Therefore, the Regents submitted a letter to Wisdom University instructing it to immediately cease degree-granting activity. Id. at 7. However, Wisdom University elected not to comply with the Regents' demand. Id. at 8. Plaintiff believes that obtaining approved accreditation

15

would interfere with Wisdom University's ability to direct religious education, subordinate its ministry to the State rather than to God, and pressure its religious doctrines by forcing it to consider whether its course selection, faculty appointments, and salaries could affect its accreditation. Id. at 8-9. Consequently, Wisdom University elects not to seek approved accreditation and thus, cannot legally grant degrees in Oklahoma. Id. at 8.

Plaintiff's allegations do not support a plausible claim that enforcement of the accreditation requirement of § 4103 will violate plaintiff's rights under the Establishment Clause.  Plaintiff makes a series of conclusory allegations that obtaining proper accreditation will involve the Regents in plaintiff's religious affairs, but these allegations are speculative at best.  Defendants have taken the position that Wisdom Ministries is free to operate a school or university without obtaining the accreditation required by § 4103, as long as Wisdom Ministries does not purport to offer a degree. Wisdom Ministries may voluntarily seek to participate in the state's regulatory scheme for the issuance of a college degree, and this will require that Wisdom University comply with certain minimum standards applicable to religious and secular universities.  These baseline requirements for accreditation may require an accrediting agency to review plaintiff's facilities and the qualifications of its faculty, but this does not mean that the accreditation process is establishing a religion or involving itself in plaintiff's internal affairs.  As stated by the Supreme Court, the Establishment Clause must be applied with"reference to historical practices and understandings." Kennedy, 142 S. Ct. at 2427-28.  States have historically had the authority to regulate colleges and universities within their borders, whether religious or secular in nature, but this does not needlessly entangle the state in the internal affairs of those institutions.  Plaintiff's conclusory allegations

16

concerning the state's entanglement in the internal affairs of Wisdom University do not state a claim arising under the Establishment Clause.

**Freedom of Association**

Plaintiff alleges that defendants violated its First Amendment right to freely associate with current and potential students by requiring State approval to use the term "degree" in designating its students' achievements. Dkt. # 28, at 4-5.  The First Amendment protects expressive association, which constitutes "a right to associate for the purpose of speaking . . . ." Rumsfeld, 547 U.S. at 62. Laws rendering group membership less attractive may violate the First Amendment if the law affects the entity's ability to express its message by requiring disclosure of membership lists or imposing penalties based on membership.  Id. at 69.  However, a law does not render group membership unconstitutionally less attractive where it conditions a school's receipt of federal funds on the school's compliance with a law the school finds repugnant. Id. at 69-70.

The Court finds that plaintiff fails to adequately allege that defendants violated its First Amendment right to freely associate with students.  Accepting as true that Wisdom University provides an environment for individuals to congregate with the purpose of engaging in religious expression and speech, § 4103 does not infringe upon the University's right to associate with students. Students remain free to attend Wisdom University, though they may not receive degrees from Wisdom University. While this limitation may decrease Wisdom University's marketability, this consequence does not lessen the student's ability to associate with the University or penalize students for attending Wisdom University.  See Rumsfeld, 547 U.S. at 69-70. Thus, plaintiff fails to adequately allege a violation of the First Amendment's Freedom of Association provision.

**Equal Protection**

Plaintiff alleges a claim arising under the Equal Protection Clause in its amended complaint, because § 4103 provides certain exemptions from the accreditation requirement but fails to provide an exemption for religious schools.  The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution provides that no state shall "deny any person within its jurisdiction the equal protection of the laws."  U.S. CONST. amend. XIV.  "The [Equal Protection] Clause 'creates no substantive rights. Instead, it embodies a general rule that States must treat cases alike but may treat unlike cases accordingly." Teigen v. Renfrow, 511 F.3d 1072, 1083 (10th Cir. 2007). "Unless a statute being challenged on equal protection grounds 'jeopardizes exercise of a fundamental right or categorizes on the basis of an inherently suspect characteristic,' it will be 'presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest . . . ." Coalition for Equal Rights, Inc. v. Ritter, 517 F.3d 1195, 1199 (10th Cir. 2008).

Plaintiff has made no attempt to argue that § 4103 jeopardizes the exercise of a fundamental right or relies on an inherently suspect classification, and the Court will apply rational basis review.[4] Therefore, the Court will presume that § 4103 is valid and the statute will be constitutional as long as it is rationally related to a legitimate state interest.  The Court has already examined the state's interest in consumer protection for potential students and employers, and has found that state has a strong interest in ensuring that degrees are awarded by institutions meeting certain generally accepted criteria.  The Court has also determined that § 4103 treats secular and religious schools equally in

---

[4]     In fact, plaintiff has wholly failed to respond to defendants' request to dismiss the equal protection claim.  The Court will rely on the amended complaint as plaintiff's argument in support of its equal protection claim.

18

terms of the accreditation requirement.  Plaintiff seems to be arguing that the state should have expressly carved out an exception to the accreditation requirement for religious schools.  However, plaintiff has not identified a constitutional basis under which religious schools should be treated differently than secular schools as to accreditation in terms of authorization to award degrees, and the Court finds that § 4103 is valid under the Equal Protection Clause.

ORFA

Defendants argue that plaintiff has not adequately alleged that the accreditation requirement imposes a substantial burden on plaintiff's religious practice, and plaintiff's ORFA claim should be dismissed. Dkt. # 25, at 8.  Plaintiff responds by reciting the allegations of the amended complaint concerning the hypothetical burdens imposed if plaintiff sought accreditation, but plaintiff cites no legal authority in support of its ORFA claim.  Dkt. # 28, at 5-6.

Section 253 states that "no governmental entity shall substantially burden a person's free exercise of religion even if the burden results from a rule of general applicability." OKLA. STAT. tit. 51, § 253(A).  If a plaintiff shows that a state law substantially burdens the free exercise of religion, the burden shifts to the governmental entity to show that the rule is "essential to further a compelling governmental interest" and is "the least restrictive means of furthering that compelling governmental interest." OKLA. STAT. tit. 51, § 253(B).  The term "'substantially burden' means to inhibit or curtail religiously motivated practice." OKLA. STAT. tit. 51, § 252(7).  A governmental action "does not substantially burden religious activity when it merely has an incidental effect that makes it more difficult to practice the religion." Griffith v. Caney Valley Public Sch., 2015 WL 2451226, *5 (N.D. Okla. May 23, 2015) (quoting Steele v. Guilfoyle, 76 P.3d 99, 102 (Okla. Civ. App. 2003)).  A plaintiff has the initial burden to allege facts supporting an inference that a governmental entity has

19

substantially burdened the plaintiff's practice of religion.   <u>Beach v. Oklahoma Dep't of Public Safety</u>, 398 P.3d 1, 7 (Okla. 2017).

Plaintiff's response to defendants' motion to dismiss is merely a recitation of the allegations of the amended complaint, and the Court has already determined that plaintiff's list of hypothetical burdens imposed by obtaining accreditation is vague and conclusory.  Plaintiff may fully practice its religion and teach its religious values to its students, even if it declines to obtain the necessary accreditation to issue degrees under Oklahoma law.  Granting college or post-secondary degrees is not a traditional function of a religious institution, even if sharing religious beliefs with others is a central tenet of plaintiff's religious beliefs as alleged in the amended complaint.  Dkt. # 14, at 5.  Plaintiff argues that there is a risk it will not be able to continue to operate Wisdom University if the university cannot grant degrees, because the university will become less attractive to potential students and current students may choose to enroll elsewhere.  Dkt. # 28, at 6.  Defendant responds that this "alleged downstream effect" of denying Wisdom University the authority to grant degrees does not show that § 4103 actually imposes a substantial burden on the exercise of plaintiff's religion.  The Court agrees that the focus of the analysis as to plaintiff's ORFA claim is whether the governmental action actually imposes a substantial burden on the exercise of plaintiff's religion, not the speculative effects that might or might not occur if plaintiff chooses to obtain the appropriate accreditation.  A neutral rule requiring accreditation by an approved organization that is applicable to all colleges and universities does not substantially burden the exercise of plaintiff's religion, and plaintiff must offer more than speculation about the possible harmful side effects of this neutral rule to state a claim under the OFRA.  Defendants' motion to dismiss is granted in its entirety, and plaintiff's claims are dismissed.

20

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss (Dkt. # 25) is **granted**.  A separate judgment of dismissal is entered herewith.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Preliminary or Permanent Injunction or Other Relief (Dkt. # 15), Plaintiff's Motion to Request a Hearing on Plaintiff's Motion for Preliminary or Permanent Injunction and Other Relief (Dkt. # 19), Plaintiff's Motion for Ruling on Pending Fully Briefed Motion for Preliminary Injunction or Permanent Injunction (Dkt. # 38) are **moot**.

**DATED** this 1st day of August, 2023.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE

21